| | |
|---|---|
| Ledge Lounger, Inc.<br><br>  Plaintiff,<br><br>v.<br><br>Aqua Chairs, LLC<br><br>  Defendant. | Case No. 4:19-cv-3995<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>(1) **TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);**<br>(2) **TRADE DRESS DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);**<br>(3) **TRADE DRESS DILUTION IN VIOLATION OF TEX. BUS. & COM. CODE § 16.103;**<br>(4) **UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);**<br>(5) **COMMON LAW TRADE DRESS INFRINGEMENT;**<br>(6) **COMMON LAW UNFAIR COMPETITION;**<br>(7) **COMMON LAW MISAPPROPRIATION; AND**<br>(8) **UNJUST ENRICHMENT.**<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff, Ledge Lounger, Inc. ("Ledge Lounger"), for its complaint against Aqua Chairs, LLC ("Aqua Chairs"), alleges as follows:

### The Parties

1.  Ledge Lounger is a company organized and existing under the laws of the State of Texas with a principal place of business at 31203 Highway 90 E, Brookshire, TX, 77423.

2.     On information and belief, Aqua Chairs is a company organized and existing under the laws of the State of Texas with a principal place of business at 17414 Wilton Park Ct, Spring, TX, 77379.

## Jurisdiction and Venue

3.     This is a complaint for damages and injunctive relief and includes multiple grounds for relief including trade dress infringement, trade dress dilution, unfair competition and false designation of origin, misappropriation, and unjust enrichment.  This complaint arises under the Texas Business & Commerce Code; the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*. ("the Lanham Act"); federal common law; and state common law, including the law of Texas.

4.     This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

5.     This Court has personal jurisdiction over Aqua Chairs because, *inter alia*, Aqua Chairs is a Texas company with a principal place of business in Texas and in this District.  This Court also has personal jurisdiction over Aqua Chairs because, *inter alia*, Aqua Chairs is purposefully and intentionally availing itself of the privileges of doing business in the State of Texas, including in this District, by, for example, advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing infringing products to customers and/or potential customers, including in this District.

6.     Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(a)-(d).

## General Allegations – Ledge Lounger's Intellectual Property

7.     For years, Ledge Lounger has continuously engaged in the design, development, manufacture, promotion, and sale of its outdoor furniture and in-pool furniture, including its Signature Chaise<sup>TM</sup> In-Pool Chairs.  Ledge Lounger created unique, distinctive, and non-functional

designs to use with its Signature Chaise™ In-Pool Chairs. Ledge Lounger has extensively and continuously promoted and used these designs in the United States and Texas. Through that extensive and continuous promotion and use, Ledge Lounger's designs have become a well-known indicator of the origin and quality of Ledge Lounger's Signature Chaise™ In-Pool Chairs. Ledge Lounger's designs also have acquired substantial secondary meaning in the marketplace and have become famous. As discussed in more detail below, Ledge Lounger owns trade dress rights relating to its Signature Chaise™ In-Pool Chairs designs.[1]

8.      Ledge Lounger has enjoyed significant sales of its Signature Chaise™ In-Pool Chairs throughout the United States, including sales to customers in the State of Texas. Ledge Lounger has invested significant resources in the design, development, manufacture, advertising, and marketing of its Signature Chaise™ In-Pool Chairs. The designs and features of Ledge Lounger's Signature Chaise™ In-Pool Chairs have received widespread and unsolicited public attention. For example, the Signature Chaise™ In-Pool Chairs have been featured in numerous newspaper, magazine, and Internet articles and posts and in numerous television programs throughout the United States and Texas.

9.      For example, numerous television programs shown throughout the United States and Texas have featured the Signature Chaise™ In-Pool Chairs including, for example, Cool Pools (HGTV, DIY), Insane Pools (Animal Planet), Pool Kings (HGTV, DIY), Desert Flippers (HGTV), Big Brother (CBS), and WAGS Miami (E! Network).

---

[1] Ledge Lounger also owns U.S. Trademark No. 5,056,441 for LEDGE LOUNGER and U.S. Trademark No. 5,384,225 for LEDGE LOUNGER and Design.

10.     As another example, numerous magazines throughout the United States and Texas have featured the Signature Chaise™ In-Pool Chairs, including, for example, Luxury Pools magazine and Luxury Home magazine:

 

11.     As another example, numerous celebrities throughout the United States have been photographed or have shared photographs of the Signature Chaise™ In-Pool Chairs on social media, including Kendall Jenner, Ellen DeGeneres, Kourtney Kardashian, Christina El Mousa-Anstead, Kim Kardashian, and Steve Aoki, and such celebrities have hundreds of millions of social media followers.

12.     As another example, numerous celebrities throughout the United States and Texas own and use the Signature Chaise™ In-Pool Chairs, including, for example, professional athletes in Houston.

13.     As a final example, numerous commercial properties throughout the United States and Texas own and use the Signature Chaise™ In-Pool Chairs, including the Marriot Marquis in Houston, the Post Oak Hotel in Houston, the Hotel Zaza in Houston, the Embassy Suites in the Woodlands, the Hilton Garden Inn in Dallas, the La Cantera in San Antonio, the Fairmount in Austin, the Golden Nugget in Lake Charles, LA, the Golden Nugget in Biloxi, MS, the Cosmopolitan in Las Vegas, NV, the MGM Grand in Las Vegas, NV, the Raleigh Hotel in Miami, FL, the Laylow Hotel in Waikiki, HI, Royal Caribbean Cruise Lines, and Top Golf.

14.     The designs of the Signature Chaise™ In-Pool Chairs have distinctive and non-functional features that identify to consumers that the origin of the chairs is Ledge Lounger.  As a result of at least Ledge Lounger's continuous and exclusive use of the designs of the Signature Chaise™ In-Pool Chairs, Ledge Lounger's marketing, advertising, and sales of the Signature Chaise™ In-Pool Chairs, and the highly valuable goodwill, substantial secondary meaning, and fame acquired as a result, Ledge Lounger owns trade dress rights in the designs and appearances of the Signature Chaise™ In-Pool Chairs, which consumers have come to uniquely associate with Ledge Lounger

15.     An exemplary image of Ledge Lounger's Signature Chaise™ In-Pool Chairs is shown below:



16.     Ledge Lounger has trade dress rights in the overall look, design, and appearance of its Signature Chaise™ In-Pool Chairs, which includes the design and appearance of the curves and tapers in the Signature Chaise™ In-Pool Chairs; the design and appearance of the profile of the Signature Chaise™ In-Pool Chairs; the design, appearance, and placement of the top portion of the Signature Chaise™ In-Pool Chairs, the design, appearance, and placement of the middle portion of the Signature Chaise™ In-Pool Chairs, the design, appearance, and placement of the

lower portion of the Signature Chaise<sup>TM</sup> In-Pool Chairs; and the relationship of these features to each other and to other features.

17.     As a result of Ledge Lounger's exclusive, continuous, and substantial use, advertising, and sales of its Signature Chaise<sup>TM</sup> In-Pool Chairs, bearing Ledge Lounger's trade dress, and the publicity and attention that has been paid to Ledge Lounger's trade dress, Ledge Lounger's trade dress has become famous and has acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate Ledge Lounger's trade dress as a source identifier of Ledge Lounger.

<u>**General Allegations – Aqua Chairs' Unlawful Activities**</u>

18.     Aqua Chairs has purposefully advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import products that violate Ledge Lounger's rights, including the rights protected by Ledge Lounger's intellectual property. Aqua Chairs' infringing products are confusingly similar imitations of Ledge Lounger's products. Aqua Chairs' actions have all been without the authorization of Ledge Lounger.

19.     As discussed in more detail below, Aqua Chairs is selling infringing chairs. Aqua Chairs is trying to confuse consumers into thinking that its chairs are associated with, sponsored by, or approved by Ledge Lounger, when they are not. Aqua Chairs' actions are unlawful, and they must stop. Aqua Chairs must also compensate Ledge Lounger for Aqua Chairs' violations of the law.

20.     Aqua Chairs' infringing products include at least Aqua Chairs' "In-Pool Chaise Lounger." An exemplary image of Aqua Chairs' infringing chair products from its website, https://aquachairs.com/, is shown below:



21.     Aqua Chairs knew of Ledge Lounger's Signature Chaise<sup>TM</sup> In-Pool Chairs and intended to copy them.  For example, in an August 7, 2019 blog post on its website, Aqua Chairs asks "What are your options" for "in-pool lounge chairs"?  Its first response is "Pay the money for the leading brand," i.e., Ledge Lounger.  Aqua Chairs goes on to state that "Many people I have talked to built their pools to include a tanning ledge with the intent to purchase *the ledge lounger chairs*."  Aqua Chairs then concludes that customers should buy its chairs, not Ledge Lounger's chairs, because Aqua Chairs' chairs are allegedly "more affordable and comfortable." https://aquachairs.com/what-are-the-alternatives-for-in-pool-chairs/ (emphasis added).

22.     As a result of Aqua Chairs' activities related to the infringing products, there is a likelihood of confusion between Aqua Chairs and its products on the one hand, and Ledge Lounger and its products on the other hand.

23.     Additionally, and as a result of Aqua Chairs' activities related to the infringing products, there is actual confusion between Aqua Chairs and its products on the one hand, and Ledge Lounger and its products on the other hand.  For example, below is a recent social media post where an infringing Aqua Chairs' chair is tagged as a Ledge Lounger chair (emphasis added):



24.     Ledge Lounger used its trade dress extensively and continuously before Aqua Chairs began advertising, promoting, offering to sell, selling, distributing, manufacturing, and/or importing into the United States its infringing products.  Moreover, Ledge Lounger's trade dress became famous and acquired secondary meaning in the United States and in the State of Texas generally and in geographic areas in Texas before Aqua Chairs commenced its unlawful use of Ledge Lounger's trade dress.

25.     Aqua Chairs' actions have been intentional, willful, and malicious.  Aqua Chairs' bad faith is evidenced at least by Aqua Chairs' direct copying of Ledge Lounger's products and Aqua Chairs' continuing disregard for Ledge Lounger's rights.

26.     Ledge Lounger sent a cease and desist letter to Aqua Chairs on August 24, 2019 requesting that Aqua Charis cease its infringing activities.  Aqua Chairs responded to that letter on September 27, 2019 and would not agree to do so.  This lawsuit followed.

**Count I:**
**Trade Dress Infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

27.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 26 as though fully set forth herein.

28.     Aqua Chairs' advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing Ledge Lounger's trade dress.  Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Aqua Chairs with Ledge Lounger and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Ledge Lounger.

29.     Ledge Lounger's trade dress is entitled to protection under the Lanham Act.  Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs.  Ledge Lounger has extensively and continuously promoted and used its trade dress in the United States.  Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products.  Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Aqua Chairs commenced its unlawful use of Ledge Lounger's trade dress in connection with the infringing products.

30.     Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

31.     Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Aqua Chairs' bad faith is evidenced at least by Aqua Chairs' direct copying of Ledge Lounger's products and Aqua Chairs' continuing disregard for Ledge Lounger's rights.

32.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is entitled to recover at least Aqua Chairs' profits, Ledge Lounger's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count II:**
**Trade Dress Dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

33.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 32 as though fully set forth herein.

34.     Based on the activities described above, including, for example, Aqua Chairs' advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing the infringing products, Aqua Chairs is likely to dilute, has diluted, and continues to dilute Ledge Lounger's famous trade dress in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).  Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof is likely to cause, and has caused, dilution of Ledge Lounger's famous trade dress at least by eroding the public's exclusive identification of Ledge Lounger's famous trade dress with Ledge Lounger and Ledge Lounger's products, by lessening the capacity of Ledge Lounger's famous trade dress to identify and distinguish Ledge Lounger's products, and by impairing the distinctiveness of Ledge Lounger's famous trade dress.

35.     Ledge Lounger's trade dress is famous and is entitled to protection under the Lanham Act.  Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs.  Ledge Lounger's trade dress has acquired distinctiveness through Ledge Lounger's extensive and continuous promotion and use of Ledge Lounger's trade dress in the United States. Through that extensive and continuous use, Ledge Lounger's trade dress has become a famous, well-known indicator of the origin and quality of Ledge Lounger's products throughout the United States, and is widely recognized by the general consuming public as a designation of the source of Ledge Lounger and Ledge Lounger's products.  Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, Ledge Lounger's trade dress became famous and acquired this secondary meaning before Aqua Chairs commenced its unlawful use of Ledge Lounger's trade dress in connection with the infringing products.

36.     Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury

to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

37.     Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Aqua Chairs' bad faith is evidenced at least by Aqua Chairs' direct copying of Ledge Lounger's products and Aqua Chairs' continuing disregard for Ledge Lounger's rights.

38.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Aqua Chairs' profits, Ledge Lounger's actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

**Count III:**
**Trade Dress Dilution under Tex. Bus. & Com. Code § 16.103**

39.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 38 as though fully set forth herein.

40.     Based on the activities described above, including, for example, Aqua Chairs' advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing the infringing products, Aqua Chairs is likely to dilute, has diluted, and continues to dilute Ledge Lounger's trade dress in violation of § 16.103 of the Texas Business & Commerce Code. Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof is likely to cause, and has caused, dilution of Ledge Lounger's famous trade dress at least by eroding the public's exclusive identification of Ledge Lounger's famous trade dress with Ledge Lounger, by lessening the capacity of Ledge Lounger's famous trade dress to identify and distinguish Ledge Lounger's products, and by impairing the distinctiveness of Ledge Lounger's famous trade dress.

41. Ledge Lounger's trade dress is famous and is entitled to protection under Texas law. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used its trade dress in the United States and in the State of Texas. Through that extensive and continuous use, Ledge Lounger's trade dress has become a famous, well-known indicator of the origin and quality of Ledge Lounger's products in the United States and in the State of Texas generally and in geographic areas in Texas, and Ledge Lounger's trade dress is widely recognized by the public throughout Texas and in geographic areas in Texas as a designation of the source of Ledge Lounger and Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace, including in the State of Texas and in geographic areas in Texas. Moreover, Ledge Lounger's trade dress became famous and acquired this secondary meaning before Aqua Chairs commenced its unlawful use of Ledge Lounger's trade dress in connection with the infringing products.

42. Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

43. Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Aqua Chairs' bad faith is evidenced at least by Aqua Chairs' direct copying of Ledge Lounger's products and Aqua Chairs' continuing disregard for Ledge Lounger's rights.

44. Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Aqua Chairs' profits, Ledge Lounger's actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

**Count IV:**
**Unfair Competition and False Designation of Origin under § 43(a)**
**of the Lanham Act, 15 U.S.C. § 1125(a)**

45. Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 44 as though fully set forth herein.

46. Aqua Chairs' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with Ledge Lounger, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and constitute unfair competition and false designation of origin, at least because Aqua Chairs has obtained an unfair advantage as compared to Ledge Lounger through Aqua Chairs' use of Ledge Lounger's trade dress, and because such uses are likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of Aqua Chairs' infringing products, at least by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with Ledge Lounger.

47. Ledge Lounger's trade dress is entitled to protection under the Lanham Act. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used its trade dress in the United States. Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's

trade dress acquired this secondary meaning before Aqua Chairs commenced its unlawful use of Ledge Lounger's trade dress in connection with the infringing products.

48.     Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

49.     Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Aqua Chairs' bad faith is evidenced at least by Aqua Chairs' direct copying of Ledge Lounger's products and Aqua Chairs' continuing disregard for Ledge Lounger's rights.

50.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Aqua Chairs' profits, Ledge Lounger's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count V:
## Common Law Trade Dress Infringement

51.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 50 as though fully set forth herein.

52.     Aqua Chairs' advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with Ledge Lounger, constitute common law trade dress infringement, at least because Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of its infringing products, at least by

creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with Ledge Lounger.

53.     Ledge Lounger's trade dress is entitled to protection under the common law. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used its trade dress in the United States and the State of Texas. Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Aqua Chairs commenced its unlawful use of Ledge Lounger's trade dress in connection with its infringing products.

54.     Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

55.     Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Aqua Chairs' bad faith is evidenced at least by Aqua Chairs' direct copying of Ledge Lounger's products and Aqua Chairs' continuing disregard for Ledge Lounger's rights.

56.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Ledge Lounger's damages, Aqua Chairs' profits, punitive damages, costs, and reasonable attorney fees.

## Count VI:
## Common Law Unfair Competition

57.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 56 as though fully set forth herein.

58.     Aqua Chairs' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with Ledge Lounger, constitute common law unfair competition, at least by palming off/passing off of Aqua Chairs' goods, by simulating Ledge Lounger's trade dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of Aqua Chairs' infringing products, at least by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with Ledge Lounger.  Aqua Chairs has also interfered with Ledge Lounger's business.

59.     Ledge Lounger's trade dress is entitled to protection under the common law.  Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs.  Ledge Lounger has extensively and continuously promoted and used Ledge Lounger's trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products.  Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Aqua Chairs commenced its unlawful use of Ledge Lounger's trade dress in connection with its infringing products.

60.     Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least

substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

61.     Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Aqua Chairs' bad faith is evidenced at least by Aqua Chairs' direct copying of Ledge Lounger's products and Aqua Chairs' continuing disregard for Ledge Lounger's rights.

62.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Ledge Lounger's damages, Aqua Chairs' profits, punitive damages, costs, and reasonable attorney fees.

**Count VII:**
**Common Law Misappropriation**

63.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 62 as though fully set forth herein.

64.     Aqua Chairs' advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with Ledge Lounger, constitute common law misappropriation.

65.     Ledge Lounger created the products covered by Ledge Lounger's trade dress through extensive time, labor, effort, skill, and money. Aqua Chairs has wrongfully used Ledge Lounger's trade dress and/or colorable imitations thereof in competition with Ledge Lounger and gained a special advantage because Aqua Chairs was not burdened with the expenses incurred by Ledge Lounger. Aqua Chairs has commercially damaged Ledge Lounger, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of Aqua Chairs' infringing products, by creating the false and misleading impression that its infringing products are

manufactured by, authorized by, or otherwise associated with Ledge Lounger, and by taking away sales that Ledge Lounger would have made.

66.     Ledge Lounger's trade dress is entitled to protection under the common law.  Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs.  Ledge Lounger has extensively and continuously promoted and used Ledge Lounger's trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products.  Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Aqua Chairs commenced its unlawful use of Ledge Lounger's trade dress in connection with its infringing products.

67.     Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger. Moreover, as a result of its misappropriation, Aqua Chairs has profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that Ledge Lounger invested in establishing the reputation and goodwill associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

68.     Aqua Chairs' misappropriation of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Aqua Chairs' bad faith is evidenced at least by Aqua Chairs' direct copying of Ledge Lounger's products and Aqua Chairs' continuing disregard for Ledge Lounger's rights.

69.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Ledge Lounger's damages, Aqua Chairs' profits, punitive damages, costs, and reasonable attorney fees.

**Count VIII:**
**Unjust Enrichment**

70.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 69 as though fully set forth herein.

71.     Aqua Chairs' advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of its infringing products, in direct competition with Ledge Lounger, constitute unjust enrichment, at least because Aqua Chairs has wrongfully obtained benefits at Ledge Lounger's expense.  Aqua Chairs has also, *inter alia*, operated with an undue advantage.

72.     Ledge Lounger created the products covered by Ledge Lounger's trade dress through extensive time, labor, effort, skill, and money.  Aqua Chairs has wrongfully used and is wrongfully using Ledge Lounger's trade dress and/or colorable imitations thereof in competition with Ledge Lounger, and has gained and is gaining a wrongful benefit by undue advantage through such use.  Aqua Chairs has not been burdened with the expenses incurred by Ledge Lounger, yet Aqua Chairs is obtaining the resulting benefits for its own business and products.

73.     Ledge Lounger's trade dress is entitled to protection under the common law.  Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs.  Ledge Lounger

has extensively and continuously promoted and used Ledge Lounger's trade dress for years in the United States and the State of Texas. Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Aqua Chairs commenced its unlawful use of Ledge Lounger's trade dress in connection with its infringing products.

74. Aqua Chairs' use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger. Ledge Lounger accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment. Aqua Chairs has wrongfully obtained and is wrongfully obtaining a benefit at Ledge Lounger's expense by taking undue advantage and free-riding on Ledge Lounger's efforts and investments, and enjoying the benefits of Ledge Lounger's hard-earned goodwill and reputation.

75. Aqua Chairs' unjust enrichment at Ledge Lounger's expense has been intentional, willful, and malicious. Aqua Chairs' bad faith is evidenced at least by Aqua Chairs' direct copying of Ledge Lounger's products and Aqua Chairs' continuing disregard for Ledge Lounger's rights.

76. Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Aqua Chairs' profits.

**Demand for Jury Trial**

Ledge Lounger hereby demands a jury trial on all issues so triable.

**Relief Sought**

WHEREFORE, Plaintiff respectfully prays for:

1.     Judgment that Aqua Chairs has (i) infringed Ledge Lounger's trade dress in violation of § 1125(a) of Title 15 in the United States Code; (ii) diluted Ledge Lounger's trade dress in violation of § 1125(c) of Title 15 in the United States Code; (iii) diluted Ledge Lounger's trade dress in violation of Tex. Bus. & Com. Code § 16.103; (iv) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (v) violated Ledge Lounger's common law rights in Ledge Lounger's trade dress; (vi) engaged in common law unfair competition; (vii) engaged in common law misappropriation; (viii) been unjustly enriched at Ledge Lounger's expense, and that all of these wrongful activities by Aqua Chairs were willful;

2.     An injunction against further infringement and dilution of Ledge Lounger's trade dress, and further acts of unfair competition, misappropriation, and unjust enrichment, by Aqua Chair, and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, manufacturing, importing, or advertising the infringing products, or any other products that use a copy, reproduction, or colorable imitation of Ledge Lounger's trade dress, pursuant to at least 15 U.S.C. § 1116 and Tex. Bus. & Com. Code § 16.104;

3.     An Order directing Aqua Chairs to recall all infringing products sold and/or distributed and provide a full refund for all recalled infringing products;

4. An Order directing the destruction of (i) all infringing products, including all recalled infringing products, (ii) any other products that use a copy, reproduction, or colorable imitation of Ledge Lounger's trade dress in Aqua Chairs' possession or control, (iii) all plates, molds, and other means of making the infringing products in Aqua Chairs' possession, custody, or control, and (iv) all advertising materials related to the infringing products in Aqua Chairs' possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5. An Order directing Aqua Chairs to publish a public notice providing proper attribution of Ledge Lounger's trade dress to Ledge Lounger, and to provide a copy of this notice to all customers, distributors, and/or others from whom the infringing products are recalled;

6. An Order barring importation of the infringing products and/or colorable imitations thereof into the United States, and barring entry of the infringing products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

7. An award of Aqua Chairs' profits, Ledge Lounger's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1125(a), 1125(c), 1116, and 1117 and Tex. Bus. & Com. Code § 16.104;

8. Such other and further relief as this Court deems just and proper.

Dated:  October 14, 2019

Respectfully submitted,


By: /s/ Joseph J. Berghammer
Joseph J. Berghammer (admitted in the Southern
District of Texas)
Attorney-In-Charge
Illinois Bar No. 6273690
Southern District of Texas Bar No. 2868672
jberghammer@bannerwitcoff.com
Banner & Witcoff, Ltd.
71 South Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

Scott A. Burow (pro hac vice forthcoming)
Illinois Bar No. 6242616
sburrow@bannerwitcoff.com
Michael L. Krashin (pro hac vice forthcoming)
Illinois Bar No. 6286637
mkrashin@bannerwitcoff.com
Banner & Witcoff, Ltd.
71 South Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR LEDGE LOUNGER, INC.**